# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN WAINE-GOLSTON and ANDRE CORBIN, individually and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TIME WARNER ENTERTAINMENT-ADVANCE/NEW HOUSE PARTNERSHIP, a New York general partnership and DOES 1 through 10, inclusive,,<br><br>Defendants. | CASE NO. 11cv1057-GPB(RBB)<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AS TO CALIFORNIA BASED EMPLOYEES ONLY**<br><br>[Dkt. No. 51.] |

Before the Court is Plaintiffs Kevin Waine-Golston and Andre Corbin's motion for class certification as to California based employees only. Defendant Time Warner Entertainment-Advance/New House Partnership ("Time Warner") filed an opposition. Plaintiffs filed a reply. The motion is submitted on the papers without oral argument, pursuant to Civil Local Rule 7.1(d)(1). After a review of the briefs, supporting documentation, and applicable law, the Court **DENIES** Plaintiffs' motion for class certification as to California based employees only.

**Procedural Background**

This action was originally filed in the Superior Court of California for the County of San Diego on April 1, 2009. On May 13, 2011, the case was removed to this Court pursuant to the Class Action

1  Fairness Act of 2005.  (Dkt. No. 1.)  On June 10, 2011, Plaintiffs filed an amended complaint.  (Dkt.
2  No. 6.)  The first amended complaint alleges a collective action pursuant to 29 U.S.C. § 216(b) for
3  violations of the Fair Labor Standards Act ("FLSA"); a class action for violation of the California
4  Labor Code; a class action for violation of California Business & Professions Code section 17200 *et*
5  *seq.*; and penalties pursuant to California's Private Attorneys General Act of 2004 ("PAGA").  (Dkt.
6  No. 6, FAC ¶¶ 11-14.)

7  On May 21, 2012, Plaintiffs filed a motion to certify class of California employees only.  (Dkt.
8  No. 51.)  On June 18, 2012, Defendant filed an opposition.  (Dkt. No. 56.)  On June 25, 2012,
9  Plaintiffs filed a reply.  (Dkt. No. 59.)  On May 18, 2012, three days prior to filing their motion for
10 class certification, Plaintiffs filed a motion for leave to file a second amended complaint.  (Dkt. No.
11 50.)  On October, 9, 2012, the Court denied Plaintiff's motion for leave to amend the first amended
12 complaint.  (Dkt. No. 83.)  Specifically, the Court denied Plaintiff's motion for leave to add new legal
13 theories and factual allegations regarding Defendant's time rounding policy; Defendant's failure to
14 include a "birthday bonus" and discounted television cable service in the regular rate of pay; and
15 Defendant's failure to provide a second meal period after ten hours of work.  (Id.)  On October 12,
16 2012, the case was transferred to the undersigned judge.  (Dkt. No. 84.)

17                                              **Background**

18  Plaintiff Kevin Waine-Golston was employed at Time Warner from October 29, 2010 until
19 April 2012 as a technical support agent ("TSA").  (Dkt. No. 6, FAC ¶ 33; Dkt. No. 51-5, Waine-
20 Golston Decl. ¶ 3.)  He states that he was subject to Time Warner's standard and uniform policies and
21 practices as laid out in its employee handbook.  (Dkt. No. 51-5, Waine-Golston Decl. ¶ 6.)  He clocked
22 in and was paid through the Kronos timekeeping system.  (Id.)

23  Plaintiff Andre Corbin was employed at Time Warner from July 20, 2007 until June 15, 2012
24 as a technical support agent.  (Dkt. No. 6, FAC ¶ 38; Dkt. No. 51-4, Corbin Decl. ¶ 3.)  He states that
25 he was subject to Time Warner's standard and uniform policies and practices as laid out in its
26 employee handbook.  (Dkt. No. 51-4, Corbin Decl. ¶ 6.)  He clocked in and was paid through the
27 Kronos timekeeping system.  (Id.)

28  Plaintiffs allege that Defendant failed to provide overtime compensation in violation of Labor

Code section 510(a); failed to provide all wages due and owing in violation of Labor Code section 204(a); failed to provide accurate itemized wage statements in violation of Labor Code section 226(a); failed to maintain accurate time records in violation of California Code of Regulations, title 8, section 11110 et seq; and failed to comply with Labor Code section 203(a) with respect to Plaintiffs who were discharged or who quit. The factual basis for these legal theories is that Plaintiffs and all other nonexempt employees were required to arrive approximately fifteen minutes prior to the beginning of their shifts so that they can log into their computers and have all necessary software programs running prior to the start of their shifts. (Dkt. No. 6, FAC ¶ 75.) Plaintiffs contend that Defendant does not pay its employees from the time they log into their computers until the time they log out of their computers. (Id. ¶ 76.) Specifically, Plaintiffs assert that Defendant does not pay its employees the time spent logging into the computers at the beginning of the day until the time they activate Avaya/Kronos, Defendant's time-keeping software, and the time spent deactivating Avaya/Kronos until the time they log out of their computers. (Id. ¶ 76.)

**Discussion**

Plaintiffs seek to certify: "[a]ll current and former nonexempt employees of TIME WARNER, Inc.[1] who were designated by TIME WARNER, Inc. as nonexempt, and worked at any time in the State of California from April 7, 2007 through the date of trial."

Plaintiffs, also alternatively, seek certification of five separate sub-classes: 1) the "compensation [rounding] policy" issue; 2) the "computer log-in and out" issue; 3) the "overtime rate of pay" issue as to the "birthday bonus" and free/discounted television cable service; 4) the lack of a "second meal period policy" issue; and 5) the "failure to pay wages to ex-employees" issue.

Defendant objects to the certification of claims regarding rounding, regular rate of pay and second meal period because they are not alleged in the operative first amended complaint. Plaintiffs contend that their complaint alleges a failure to pay all wages due which would encompass these claims. At the time when Plaintiffs' motion for class certification was fully briefed on June 25, 2012,

---

[1] It appears that Plaintiffs have misnamed the Defendant in its class designation. Defendant is Time-Warner Entertainment-Advance/Newhouse Partnership, not Time Warner, Inc. as Time-Warner Entertainment-Advance/Newhouse Partnership was substituted as the proper party on June 15, 2011. (Dkt. No. 7.)

the parties did not have the benefit of Judge Moskowitz' order denying Plaintiff's motion for leave to amend the first amended complaint filed on October 9, 2012. In that order, Judge Moskowitz denied Plaintiff's motion to add allegations concerning the time rounding policy, failure to include a "birthday bonus" and discounted television cable service in the regular rate of pay and Defendant's failure to provide a second meal period after ten hours of work. (Dkt. No. 83.) In coming to its conclusion, the Court noted that the parties entered into a stipulation where "Plaintiffs contend that their First Amended Complaint does not challenge Defendant's practice of rounding time." (Id. at 4 citing Dkt. No. 43.)

Plaintiffs may not certify a class based on claims not asserted in the complaint. See Anderson v. U.S. Dep't of Hous. & Urban Dev., 554 F.3d 525, 528-29 (5th Cir. 2008) (trial court abused discretion certifying class based on claims not alleged in complaint); Trinidad v. Victaulic Co. of Am., No. 85-1962, 1986 WL 276 *3 (E.D. Penn. Aug. 15, 1986) (denying certification of subclass based on claims not alleged in complaint).

Although the papers discuss all the issues Plaintiffs seek to certify, the Court only addresses certification as it concerns the computer log-in and out policy and the failure to pay wages to ex-employees as both are alleged in the first amended complaint.

**A.   Legal Standard for Class Certification**

Federal Rule of Civil Procedure 23 ("Rule 23") governs the certification of a class. See Fed. R. Civ. P. 23. A plaintiff seeking class certification must affirmatively show the class meets the requirements of Rule 23. Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011). To obtain certification, a plaintiff bears the burden of proving that the class meets all four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy. Ellis v. Costco Wholesale Corp., 657 F.3d 970 979-80 (9th Cir. 2011). If these prerequisites are met, the court must then decide whether the class action is maintainable under Rule 23(b). The Court exercises discretion in granting or denying a motion for class certification. Staton v. Boeing Co., 327 F.3d 938, 953 (9th Cir. 2003).

The party seeking to certify a class must demonstrate that it has met all four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2011). The moving party must provide allegations and supporting

facts to satisfy these requirements. Doninger v. Pacific Northwest Bell, Inc., 564 F.2d 1304, 1309 (9th Cir. 1977).

The Court is required to perform a "rigorous analysis," which may require it "to probe behind the pleadings before coming to rest on the certification question." Dukes, 131 S. Ct. at 2551. "'[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class. More importantly, it is not correct to say a district court may consider the merits to the extent that they overlap with class certification issues; rather, a district court must consider the merits if they overlap with Rule 23(a) requirements." Ellis, 657 F.3d.at 981. Nonetheless, the district court does not conduct a mini-trial to determine if the class "could actually prevail on the merits of their claims." Id. at 983 n.8; United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co., 593 F.3d 802, 808 (9th Cir. 2010) (citation omitted) (court may inquire into substance of case to apply the Rule 23 factors, however, "[t]he court may not go so far . . . as to judge the validity of these claims."). "[I]n determining whether to certify the class, the district court is bound to take the substantive allegations of the complaint as true" but "also is required to consider the nature and range of proof necessary to establish those allegations." In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig., 691 F.2d 1335, 1342 (9th Cir. 1982) (citing Blackie v. Barrack, 524 F.2d 891, 901 n. 7 (9th Cir. 1975)).

**1.    Rule 23(a)(1) - Numerosity**

To establish numerosity, a plaintiff must show that the represented class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); Bates v. United Parcel Serv., 204 F.R.D. 440, 444 (N.D. Cal. 2001). However, "impracticable" does not mean impossible; it refers only to the difficulty or inconvenience of joining all members of the class. Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913 (9th Cir. 1964). "Because no exact numerical cut-off exists, the specific facts of each case must be examined to determine if impracticability exists." Haley v. Medtronic, Inc., 169 F.R.D. 643, 647 (C.D. Cal. 1996) (citing Gen. Tel. Co. v. EEOC, 446 U.S. 318, 330 (1980)). "As a general rule, classes of 20 are too small, classes of 20–40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough." Ikonen v. Hartz Mountain Corp., 122 F.R.D. 258, 262 (S.D. Cal. 1988) (citation omitted).

Plaintiffs assert that there are about 2,000 members of the putative class in Count II and 1,800 ascertaining members in Count III. (Dkt. No. 6, FAC ¶¶ 22, 23.) Time Warner does not challenge the numerosity requirement. Therefore, the Court concludes that it has been met.

### 2.     Rule 23(a)(2) - Commonality

Plaintiffs argue that the common legal questions are whether Time Warner's failure to consider its computer records when calculating its employees "time worked" violated California Labor sections 204(a), 510(a) and/or 1194; and whether Time Warner's failure to provide "back wages" to ex-employees violate California Labor Code section 203. Defendant contends that Plaintiffs have not established commonality as there was no requirement or practice that employees loaded programs prior to clocking in.

Under the Rule, Plaintiffs must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" Dukes, 131 S. Ct. at 2551. "That common contention . . . must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. "'What matters to class certification . . . is not the raising of common 'questions' . . . but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.'" Id. (emphasis in original) (citation omitted).

California Labor Code section 510(a) provides:

> (a) Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee.

Cal. Labor Code § 510(a)

California Labor Code section 204(a) provides:

> (a) All wages, other than those mentioned in Section 201, 201.3, 202, 204.1, or 204.2, earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays. Labor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and the 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any

      calendar month, shall be paid for between the 1st and 10th day of the following month.

Cal. Labor Code § 204(a).

      California Labor Code section 1194 states:

> (a) Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

Cal. Labor Code § 1194(a).

      California Labor Code section 203 provides:

> (a) If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

Cal. Labor Code § 203.

      According to Time Warner's Employee Handbook, "time worked" is defined as the time recorded on the Kronos system. (Dkt. No. 51-7, Ps' Notice of Lodgment ("NOL"), Ex. B, Chandler Depo. at 33:5-34:5.) The Kronos timekeeping system tracks hours worked by its hourly, non-exempt employees. (Dkt. No. 56-5, Testa Decl. ¶ 3.) The Kronos records are titled "Time Detail Reports." (Dkt. No. 51-7, Ps' Notice of Lodgment ("NOL"), Ex. B, Chandler Depo. at 33:5-34:5.) As to the Avaya system, the "employee uses the Avaya system, which records the time in Kronos." (Id. at 34:21-22.) Time Warner requires that employees must record actual times in and out at the beginning of the workday, when leaving and returning from lunch, and at the end of the workday. (Id. at 41:19-22.)

      As to the computer log-in and out issue, Plaintiffs present the following two facts. Waine-Golston states that he corresponded with his supervisor Kevin Nester where Nester instructed him to load his "ACR"[2] program before clocking in. (Dkt. No. 51-5, Waine-Golston Decl. ¶ 8.; see also Dkt No. 51-7, Ps' NOL, Ex. O.) Another document, dated August 4, 2011, reveals that Waine-Golston

---

[2] Plaintiffs do not explain what the ACR program is but the Court assumes it is a software program used by the TSAs to perform their duties.

accessed the "Unified System"[3] at 6:45 p.m.; however, he did not log back into the Kronos/Avaya system until 6:48 p.m. causing a loss of 3 minutes of compensation. (Dkt. No. 51-6, Ps' NOL, Ex. P.) Plaintiff does not provide any documents to show that Corbin or any other putative class members clocked in after they loaded their programs.

In opposition, Defendant contends there is no commonality because the putative class members have different job duties, routines and methods of recording their time. Plaintiffs' testimony and records also show that there is no commonality. In addition, Defendant states it did not require employees to arrive early to load programs. Lastly, the message exchange between Waine-Golston and Kevin Nester, a fellow employee[4], occurred one month after the lawsuit was filed and does not demonstrate a requirement that non-exempt employees are required to load programs prior to clocking in.

Prior to May 2010, all hourly, non-exempt employees in California, except the employees working in the field, clocked in and out via a wall clock, merely by swiping their badge on the way in and out of the call center. (Dkt. No. 56-5, Testa Decl. ¶ 4.) Corbin testified that he used the wall clock system. (Dkt. No. 56-9, D's Appx, Ex. B, Corbin Depo at 63:19-64:6.) Employees in the field used Tele-Time to record their start and stop times by using their cellular telephones to call in and record their times. (Dkt. No. 56-5, Testa Decl. ¶ 5.)

In 2010, Time Warner phased out the use of wall clocks and implemented the Kronos system. (Id. ¶ 6.) By June 26, 2010, all hourly, non-exempt employees who did not work in a call center or in the field were to use their Kronos icon on their desktops to clock in and out. (Id. ¶ 7.) By May 4, 2010, all hourly, non-exempt employees in the call centers whose duties required them to service customers over the phone, used Kronos Connect, which integrated the Kronos timekeeping system with the Avaya soft-phone system that call center employees use to handle customer phone calls. (Id. ¶ 9.) When the call center employee logs into Avaya, the employee is automatically clocked into

---

[3] Plaintiffs do not explain what the "UNIFIED SYSTEM" is and how it correlates with Kronos/Avaya; however, the Court extrapolates from Defendant's papers that UNIFIED is a software program utilized by the TSAs to perform their duties.

[4] Waine-Golston testified that Nester was not a supervisor. (Dkt. No. 56-9, D's Appx., Ex. A, Waine-Golston Dep. at 109:7-17.)

1  Kronos. (Id.) The field employees continued to use Tele-Time to clock in and out. (Id. ¶ 8.)

2  Defendant provides a declaration stating that most employees lock their computers at the end of the shift instead of logging off. (Dkt. No. 56-7, D's Appx., White Decl. ¶ 14.) To log in to Avaya, the technical support agents ("TSA") typically 1) unlock their computers by pressing "control-alt-delete" and enter their system login ID and password; 2) click the Avaya "Log In" icon; and 3) click the "log in" button. (Dkt. No. 56-7, D's Appx, White Decl. ¶ 14; Dkt. No. 56-9, D's Appx., Ex. A, Waine-Golston Depo. at 231:14-17.) This process takes less than 30 seconds. (Dkt. No. 56-7, D's Appx., White Decl. ¶ 14.) If the employee logged off their computer at the end of his or her shift, it would take about two minutes or less to log in and clock in through Avaya. (Id. ¶ 15.) Waine-Golston testified it takes "less than a minute" to unlock the computer and clock-in, while Corbin stated that the process took "a minute, two minutes top." (Dkt. No. 56-9, D's Appx., Ex. A, Waine-Golston Depo. at 195:12-14; Dkt. No. 56-9, D's Appx, Ex. B, Corbin Depo. at 108:21-109:3.)

Moreover, both Plaintiffs testified that they loaded programs after they clocked in. Corbin testified numerous times that he loaded the programs after he clocked in. (Dkt. No. 56-9, D's Appx, Ex. B, Corbin Depo. at 69:8-16; 71:7-10; 85:24-86:7; 95:9-18.) Waine-Golston testified that he would load up the other programs after clocked in. (Dkt. No. 56-9, D's Appx., Ex. A, Waine-Golston Depo. at 222:14-223:16.)

Defendant provides records showing the times when Waine-Golston loaded a software program called AAD and UNIFIED during July 21, 2011 to October 14, 2011 and compared it to the Kronos Time Detail Reports for the same time period. (Dkt. No. 56-1, Kabat Decl. ¶ 2.) The records reveal that Waine-Golston routinely clocked in before loading the ADD and UNIFIED programs. (Id.) The records showed one instance when Waine-Golston loaded AAD before he clocked in on July 26, 2011 and it was loaded one minute before clocking in. (Id.) In addition, as to the UNIFIED program, there were two instances on August 11 and 15, 2011 when he loaded UNIFIED before clocking in and it took one or two minutes before he clocked into Kronos. (Id., Ex. H.)

As to Corbin, the time period from July 7, 2010 to June 15, 2011 showed that he clocked into Kronos before loading the AAD software every day except one instance on March 19, 2011 where he logged into AAD one minute before clocking into Kronos. (Id. ¶ 3.)

1    Defendant's attendance policy states, "[e]mployees are expected to report to work properly
2 as scheduled and to be at their workstations on time. (Dkt. No. 56-4, Chandler Decl. ¶ 4.; Dkt. No.
3 56-10, D's Appx, Ex. L.) Moreover, Plaintiffs confirm that there was no written policy requiring
4 employees to arrive early. (Dkt. No. 56-9, D's Appx, Ex. B, Corbin Depo. at 79:4-14; 92:5-7; Dkt.
5 No. 56-9, D's Appx, Ex. A, Golston Depo. at 163:21-164:8.) There was also a written policy of >>>>

6    The Employee Timecard Approval Procedure states that the method, either by telephone,
7 personal computer, etc. of accessing Kronos varies depending upon the department and employee
8 location. (Dkt. No. 56-9, D's Appx., Ex. C.) Moreover, Waine-Golston stated that in order to load
9 up the other programs, one had to start Avaya because that was the only way an employee logged in.
10 (Dkt. No. 56-9, D's Appx., Ex. A, Waine-Golston Depo. at 222:14-223:9-16.)

11    Defendant also further provides the declarations of twenty-one currently employed putative
12 class members each stating that there was no policy requiring them to load programs prior to clocking
13 in or to otherwise work off the clock. (Dkt. 56-6, D's Appx. of Declarations of Putative Class
14 Members, Exs 1, 2, 3, 4, 5, 6, 9, 10, 11, 13, 16, 17, 19, 20, 21, 22, 23, 24, 25, 26, 27.) Supervisors also
15 confirm that they either advised employees to clock in prior to performing any work or that there was
16 a policy that required employees to log in to programs prior to clocking in, and that there was no
17 requirement or expectation that employees arrive early. (Id., Exs. 8, 12, 14, 15, 18, 28.)

18    Based on these facts, Plaintiffs have not established commonality among the putative class
19 members as to the computer log-in and out policy. They have not shown there was a uniform stated
20 policy or a practice that employees were required to arrive fifteen minutes early to log in to their
21 programs and have all necessary software programs running prior to the start of their shift. Non-
22 exempt employees have different jobs and different methods of keeping their time. Moreover, prior
23 to 2010, the use of a computer log-in and out of the Kronos was not even applicable during the
24 relevant time period Plaintiffs seek to certify. Plaintiffs only provide one example of Waine-Golston
25 logging into a program prior to clocking in. Furthermore, Plaintiffs testified that they clocked in prior
26 to loading programs. Plaintiffs have failed to demonstrate that the putative class members have
27 suffered the same injury. Consequently, Plaintiffs have failed to show a common core of facts or a
28 shared legal issue that affects all class members with respect to this claim.

In addition, Plaintiffs seek class certification as to Time Warner's failure to provide wages to ex-employees stating that based on Defendant's records, there are at least 750 ex-employees during this time period. Plaintiffs state they are ex-employees and did not receive any "back wages" from Time Warner. (Dkt. No. 51-5, Waine-Golston Decl. ¶ 10; Dkt. No. 51-4, Corbin Decl. ¶ 9.) Besides Plaintiffs' declarations, they have not provided any evidence that there was a uniform policy or practice of Time Warner to not pay back wages to the 750 ex-employees. Despite the fact that Defendant has failed to address this issue[5], the Court concludes that Plaintiffs have failed to demonstrate commonality on this issue.

Based on our conclusion as to the commonality question, it is not necessary to determine whether Plaintiffs have satisfied the typicality and adequate requirements of Rule 23(a). See Dukes, 131 S. Ct. at 2551 n. 5 ("In light of our disposition of the commonality question, however, it is unnecessary to resolve whether respondents have satisfied the typicality and adequate-representation requirements of Rule 23(a).")

### 3.     Rule 23(b)

Because the Court find that the requirements of Rule 23(a) are not met, we need not reach the question of whether the proposed class satisfy the requirements of Rule 23(b). See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186, amended, 273 F.3d 1266 (9th Cir.2001) (noting that under Rule 23, the plaintiff must show that all four of the requirements of Rule 23(a) are met and then at least one requirement of Rule 23(b)); see Hanlon v. Chrysler Corp, 150 F.3d 1011, 1019 (9th Cir. 1998) (Rule 23(a) is the threshold analysis for determining whether class certification is appropriate).

**B.     Evidentiary Objections**

In their reply, Plaintiffs filed objections to documents submitted by Defendant in its opposition to Plaintiffs' motion for class certification. (Dkt. No. 59-4, -5, -6, -7, -8.) Without leave of Court Defendant filed a response to Plaintiffs' evidentiary objections. (Dkt. No. 64-68.)

Since a motion to certify a class is a preliminary procedure, courts do not require strict adherence to the Federal Rules of Civil Procedure or the Federal Rules of Evidence. See Eisen v.

---

[5]Defendant states that it did not independently analyze this issue since it claims that the failure to pay wages issue is derivative of the computer log-in and out claim.

Carlisle and Jacquelin, 417 U.S. 156, 178 (1974) (The class certification procedure "is not accompanied by the traditional rules and procedures applicable to civil trials."). At the class certification stage, "the court makes no findings of fact and announces no ultimate conclusions on Plaintiffs' claims." Alonzo v. Maximus, Inc., 275 F.R.D. 513, 519 (C.D. Cal. 2011) (quoting Mazza v. Am. Honda Motor Co., 254 F.R.D. 610, 616 (C.D. Cal. 2008). Therefore, the Court may consider inadmissible evidence at the class certification stage. Keilholtz v. Lennox Hearth Prods, Inc., 268 F.R.D. 330, 337 n. 3 (N.D. Cal. 2010). "The court need not address the ultimate admissibility of the parties' proffered exhibits, documents and testimony at this stage, and may consider them where necessary for resolution of the [Motion for Class Certification]." Alonzo, 275 F.R.D. at 519.

Here, Plaintiffs present evidentiary objections to evidence submitted by Defendant in support of its opposition to Plaintiffs' motion for class certification. At this stage of preliminary proceedings, the Court need not require strict adherence to the Federal Rules of Evidence. See Eisen, 417 U.S. at 178. Accordingly, the Court overrules Plaintiffs' evidentiary objections.

## Conclusion

Based on the above, the Court DENIES Plaintiffs' motion for class certification as to California based employees only.

IT IS SO ORDERED.

DATED: December 18, 2012

HON. GONZALO P. CURIEL
United States District Judge