# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN WAINE-GOLSTON and ANDRE CORBIN, individually and on behalf of other members of the general public similarly situated,<br><br>                              Plaintiffs,<br><br>  vs.<br><br>TIME WARNER ENTERTAINMENT-ADVANCE/NEW HOUSE PARTNERSHIP, a New York general partnership and DOES 1 through 10, inclusive,,<br><br>                              Defendant. | CASE NO. 11cv1057-GPB(RBB)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Dkt. No. 81.] |

Before the Court is Defendant's motion for summary judgment. (Dkt. No. 81.) On November 30, 2012, Plaintiffs filed an opposition. (Dkt. No. 88.) Defendant filed a reply on December 14, 2012. (Dkt. No. 90.) On February 15, 2013, the Court held a hearing. (Dkt. No. 96.) Eric Yaeckel, Esq. and Kevin Sullivan, Esq. appeared on behalf of Plaintiffs and Joseph Ozmer, Esq. and Michael Kabat, Esq. appeared on behalf of Defendant. Based on the papers, applicable law, and hearing oral argument, the Court GRANTS Defendant's motion for summary judgment.

## Background

This action was originally filed in the Superior Court of California for the County of San Diego on April 1, 2009. On May 13, 2011, the case was removed to this Court pursuant to the Class Action

1 Fairness Act of 2005. (Dkt. No. 1.) On June 10, 2011, Plaintiffs Kevin Waine-Golston and Andre Corbin filed an amended complaint against their employer, Time Warner Entertainment-Advance/New House Partnership ("Defendant"). (Dkt. No. 6.) The first amended complaint alleges a collective action pursuant to 29 U.S.C. § 216(b) for violations of the Fair Labor Standards Act ("FLSA"); a class action for violation of the California Labor Code; a class action for violation of California Business & Professions Code section 17200 *et seq.*; and penalties pursuant to California's Private Attorneys General Act of 2004 ("PAGA"). (Dkt. No. 6, FAC ¶¶ 11-14.)

As to the California state causes of action, Plaintiffs allege that Defendant failed to provide overtime compensation in violation of Labor Code section 510(a); failed to provide all wages due and owing in violation of Labor Code section 204(a); failed to provide accurate itemized wage statements in violation of Labor Code section 226(a); failed to maintain accurate time records in violation of California Code of Regulations, title 8, section 11110 *et seq*; and failed to comply with Labor Code section 203(a) with respect to Plaintiffs who were discharged or who quit. (Id. ¶ 69.)

The factual basis for all the causes of action is that Plaintiffs and all other nonexempt employees are required to arrive approximately fifteen minutes prior to the beginning of their shifts in order to log into their computers and have all necessary software programs running prior to the start of their shifts. (Dkt. No. 6, FAC ¶ 75.) Second, Plaintiffs assert that Defendant does not pay its employees the time spent logging into the computers and/or loading programs at the beginning of the day until the time they activate Avaya/Kronos, Defendant's time-keeping software, and the time spent deactivating Avaya/Kronos until the time they log out of their computers. (Id. ¶ 76.) Lastly, Plaintiffs maintain that Defendant failed to pay overtime compensation based on Defendant's rounding policy. (Id. ¶¶ 48, 59-61.)

On May 21, 2012, Plaintiffs filed a motion to certify class of California employees only. (Dkt. No. 51.) On May 18, 2012, three days prior to filing their motion for class certification, Plaintiffs filed a motion for leave to file a second amended complaint. (Dkt. No. 50.) On October, 9, 2012, the Court denied Plaintiffs' motion for leave to amend the first amended complaint. (Dkt. No. 83.) Specifically, the Court denied Plaintiffs' motion for leave to add new legal theories and factual allegations regarding Defendant's time rounding policy; Defendant's failure to include a "birthday bonus" and discounted

television cable service in the regular rate of pay; and Defendant's failure to provide a second meal period after ten hours of work. (Id.) On October 12, 2012, the case was transferred to the undersigned judge. (Dkt. No. 84.) On December 18, 2012, the Court denied Plaintiffs' motion for class certification as to California Based Employees Only. (Dkt. No. 91.)

At the hearing, the Court requested the parties to meet and confer regarding the time records and provide supplemental briefing on the rounding issue. On March 8, 2013, the parties filed a joint response. (Dkt. No. 102.) They also filed their respective briefs regarding the joint response. (Dkt. Nos. 103, 104.)

**Undisputed Factual Background**

Plaintiff Kevin Waine-Golston was employed at Time Warner from October 29, 2010 until April 12, 2012. (Dkt. No. 88-6 at 2.) Plaintiff Andre Corbin was employed at Time Warner from July 20, 2007 until June 15, 2011. (Dkt. No. 88-6 at 2.) Both were employed at the San Diego call center. (Dkt. No. 88-6 at 2.)

In May 2010, Defendant integrated the Kronos clock-in/clock out process with the Avaya phone system in the San Diego call center. (Dkt. No. 88-6 at 6.) When Plaintiffs logged into the Avaya phone system, they would automatically be clocked into Kronos. (Dkt. No. 88-6 at 6.) Prior to May 4, 2010, Corbin clocked in and out using the Kronos timekeeping system by using a card swipe system located at the entrance/exit to the call center. (Dkt. No. 88-6 at 6.)

**I.    Legal Standard for Motion for Summary Judgment**

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues

of material fact. Celotex Corp., 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. Id. at 322-23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. Id. at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. Anderson, 477 U.S. at 255.

**II.     Fair Labor Standards Act ("FLSA")**

After a careful review of the first amended complaint and the parties' briefs, the Court concludes that the first amended complaint alleges that Defendant failed to pay employees for overtime compensation based on Defendant's rounding policy.[1] (FAC ¶ 17; see also Dkt. No. 88-2, Sullivan Decl. ¶ 5.) Specifically, Plaintiffs allege that they are required to arrive fifteen minutes prior to the beginning of their shifts to have all necessary software programs running prior to the start of their shifts; (id. ¶ 55); Defendant does not pay its employees from the time they log into their computers and/or load programs until the time they activate Avaya/Kronos and from the time they deactivate Avaya/Kronos until the time they log off, (id. ¶¶ 6, 47, 56); and Defendant does not pay overtime

---

[1] The parties spend a good amount of argument on whether Defendant's "rounding policy" is a cause of action or an affirmative defense. As a result, the briefing on this issue has been confusing, contradictory and not helpful to the Court.

1  compensation for hours in excess of forty hours as indicated on their Avaya/Kronos time records based
2  on Defendant's rounding policy. (Id. ¶¶ 59-61.)

3  Generally, employers are required to pay employees overtime for hours worked in excess of
4  forty hours per week. Solis v. Washington, 656 F.3d 1079, 1083 (9th Cir. 2011). 29 U.S.C. §
5  207(a)(1) provides,

> no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

First, Defendant argues that any allegations before May 4, 2010 is without merit because the Avaya/Kronos system was not used prior to that date. (Dkt. No. 81-4, Testa Decl. ¶¶ 4-5.) Plaintiffs do not oppose or address this issue.

Defendant uses the Kronos timekeepng system to track hours worked by its hourly, non-exempt employees. (Dkt. No. 81-4, Testa Decl. ¶ 3.) Until May 4, 2010, call center employees clocked in and out by swiping their identification badge through the wall clock mounted at the entrance to the call center. (Id. ¶ 4.) The time of the swipe was recorded in Kronos as their clock-in time. (Id.) Effective May 4, 2010, hourly, non-exempt employees at the call center stopped using wall clocks and began clocking in and out through a system known as Kronos Connect. (Id. ¶ 5.) The process integrated the Kronos timekeeping system with the Avaya soft-phone system that call center employees use to handle customer phone calls. (Id. ¶ 5.) When a call center employee logs into Avaya, he is automatically clocked in to Kronos and when an employee logs out of Avaya, he is automatically clocked out of Kronos. (Id.) The integration of the system helps to prevent off the clock work as it makes it impossible for employees to take phone calls without being clocked in to Kronos. (Id.)

Corbin testified that he clocked-in by swiping his card using a wall clock until sometime in 2010. (Dkt. No. 81-6, Ozmer Decl., Ex. B, Corbin Depo. at 63:19-64:11; 68:5-69:5.) Waine-Golston did not start employment with Defendant until after the implementation of Avaya/Kronos. The first amended complaint alleges violations based on the Avaya/Kronos time records and not based on clocking-in through swiping badges through a wall clock. (Dkt. No. 6.) Plaintiffs do not dispute this

1  issue. The Court concludes that Defendant has demonstrated an absence of a genuine issue of material
2  fact as to any claims before May 4, 2010. Accordingly, the Court GRANTS Defendant's motion for
3  summary judgment as to any claims to recover for allegations prior to May 4, 2010.

### A. Requirement to Arrive Fifteen Minutes Early to Load Programs Before Clocking In

In the first amended complaint, Plaintiffs contend that they are required to arrive fifteen minutes before their scheduled start shift to load all computer programs needed to perform their jobs prior to clocking in through Avaya/Kronos. (Dkt. No. 6, FAC ¶ 55.) Defendant argues there is no genuine issue of material fact that Plaintiffs were required to arrive fifteen minutes early to load programs before clocking in. Plaintiffs do not oppose this argument.

Plaintiff Corbin testified that there was no rule requiring employees to arrive early. (Dkt. No. 81-6, Ozmer Decl., Ex. B, Corbin Depo. at 79:4-14.) Waine-Golston also testified that he was not required to be at work early. (Id., Ex. A, Waine-Golston Depo. at 163:21-164:8.) Based on these statements, Defendant has demonstrated an absence of a genuine issue of material fact. Accordingly, the Court GRANTS Defendant's motion for summary judgment on the FLSA claim as to the alleged requirement that Plaintiffs are required to arrive to work fifteen minutes early in order to load computer programs prior to clocking in through Avaya/Kronos.

### B. Logging In and Out

In the first amended complaint, Plaintiffs appear to allege two separate contentions related to the logging in and out claim. First, they assert that Defendant did not pay its employees for the time spent logging into their computers until the time they activated Avaya/Kronos and the time spent deactivating Avaya/Kronos until the time they log out. (Dkt. No. 6, FAC ¶ 56.) Second, Plaintiffs argue that they were not compensated for time spent logging into computer programs such as "AAD" and "Unified" prior to clocking into Avaya/Kronos. (Dkt. No. 88 at 7.)

Employees can log-in to Avaya by unlocking or "waking up" their computers by pressing "control-alt-delete" and entering their log-in ID and clicking the Avaya icon. (Dkt. No. 81-6, Ozmer Decl., Ex. A, Waine-Golston Depo. at 195:4-16.) Waine-Golston testified that it took "less than a minute" to "wake up the computer, log in my ID and then immediately I would go to Avaya." (Dkt.

1  No. 81-6, Ozmer Decl., Ex. A, Waine-Golston Depo. at 195:10-14.)  Corbin also testified that his
2  clock-in routine took a "minute, two minutes tops." (Id., Ex. B, Corbin Depo. at 108:21-109:3.)
3  Waine-Golston testified that he "always" clocked in through Avaya before loading other computer
4  programs. (Id., Ex. A, Waine-Golston Depo. at 223:2-16; 226:18-227:15.) Corbin also stated that it
5  was his practice to log in to Avaya first and then load other programs. (Id., Ex. B, Corbin Depo. at
6  86:2-6; 91:10-13; 95:9-18.) As to logging off, Waine-Golston stated that logging off was quick, "30
7  seconds, if that." (Id., Ex. A, Waine-Golston Depo. at 231:1-5.)

In their opposition brief, Plaintiffs present two examples where Plaintiffs accessed a software program, called "Unified" or "AAD", prior to logging into Avaya/Kronos.[2]  On August 4, 2011, Waine-Golston access the "Unified" computer program at 6:45 p.m. but did not log into Avaya/Kronos until 6:48 p.m. causing of loss of 3 minutes of compensation. (Dkt. No. 88-7, Ps' NOL, Ex. I; Dkt. No. 81-7, D's Appx., Ex. E -25.)  In another example, Corbin accessed the "AAD" system at 8:28:52 p.m.[3] on March 19, 2011 but did not log into Avaya/Kronos until 8:29 p.m. causing a one minute loss of compensable time. (Dkt. No. 88-7, Ps' NOL, Ex. K; Dkt. No. 81-7, D's Appx., Ex. H-57. )

Defendant argues that the claim fails because the minutes alleged to have been lost is *de minimis* as a matter of law. Plaintiffs assert that Defendant cannot assert a *de minimis* affirmative defense as it is not alleged in its first amended answer.  Moreover, they contend that even if the Court considers the *de minimis* argument, the defense does not apply because the time lost is ascertainable through time records and in the aggregate, the loss is substantial.

Although the Ninth Circuit has not asserted whether *de minimis* is an affirmative defense, district court cases have treated it as an affirmative defense or have not objected to Defendants' characterization of it as an affirmative defense. Willner v. Manpower, Inc., 11-2846-JSW(MEJ), 2012 WL 4902992, at *1 (N.D. Cal. Oct. 16, 2012); Figueroa v. Islands Rests., L.P., 12-766-RGK(JCGx), 2012 WL 2373249, at *3-4 (C.D. Cal. June 22, 2012); Meas v. CVS Pharm, Inc., 11cv823-JM(JMA),

---

[2] Many of the examples Plaintiffs provide in their opposition and in the supporting record, concern the failure to pay overtime based on Defendant's use of "rounding" and not the logging in and out claim.

[3] The AAD records punches in Eastern Time. (Dkt. No. 88-7, Ps' NOL, Ex. P., Waine-Golston Depo. at 225:17-19; Dkt. No. 81-5, Kabat Decl. ¶¶ 3, 4.)

2011 WL 2837432, at *4 (S.D. Cal. July 14, 2011).

If *de minimis* is an affirmative defense, Rule 8 requires a party to state affirmative defenses in a responsive pleading.  Fed. R. Civ. P. 8(c)(1).  However, the Ninth Circuit allows defendants to raise affirmative defenses for the first time in a motion for summary judgment if the delay does not prejudice the plaintiff.  Magana v. Commonwealth of N. Mariana Islands, 107 F.3d 1436, 1446 (9th Cir. 1997) (defendants raised affirmative defense three months after filing their answer); Camarillo v. McCarthy, 998 F.2d 638, 639 (9th Cir. 1993); Ledo Fin. Corp. v. Summers, 122 F.3d 825, 827 (9th Cir. 1997).

Here, Plaintiffs do not contend they will be prejudiced by Defendant's assertion of the *de mininis* defense.  As Defendant argues, Plaintiffs will not be prejudiced as they were aware of the *de minimis* defense four months before the close of discovery.  (Dkt. No. 39 at 15-16.)  Therefore, the Court permits Defendant to assert *de minimis* as a defense.

"As a general rule, employees cannot recover for otherwise compensable time if it is *de minimis*."  Lindow v. U.S., 738 F.2d 1057, 1062 (9th Cir. 1984).  In "determining whether otherwise compensable time is *de minimis*, we will consider (1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work."  Id. at 1064.  Courts should also consider the amount of daily time spent on the additional work.  Id. at 1062.  There is no rigid rule but "common sense must be applied to the facts of each case."  Id. at 1062.  Many courts have found ten minutes per day is *de minimis*.  Id. at 1062 (citing E.I. du Pont De Nemours & Co. v. Harrup, 227 F.2d 133, 135-36 (4th Cir. 1955) (10 minutes)); Green v. Planters Nut & Chocolate Co., 177 F.2d 187, 188 (4th Cir. 1949) ("obvious" that 10 minutes is *de minimis* ); Carter v. Panama Canal Co., 314 F. Supp. 386, 392 (D.D.C. 1970) ("2 to 15 minutes is negligible and not compensable"), aff'd, 463 F.2d 1289 (D.C. Cir.), cert. denied, 409 U.S. 1012 (1972); see also Gillings v. Time Warner Cable, 10-5565-AG(RNBx), 2012 WL 1656937, at *4 (C.D. Cal. March 26, 2012) (6 minutes is *de minimus*).

In Lindow, the Ninth Circuit held that plaintiff's claim of 7-8 minutes of pre-shift work was *de minimus*.  In support, the court noted the defendant's difficulty in recording the overtime as it had no consistent policy to pay overtime for less than fifteen minutes of work.  Lindow, 738 F.2d at 1063.

Moreover, there was a lot of variance in the amount of pre-shift time spent on social versus compensable activities and the defendant would have difficulty monitoring this pre-shift activity. Id. at 1064. As to the second factor in Lindow, courts should consider that while the amount of time may be minimal on a daily basis, when aggregated, it amounts to a substantial claim. Id. at 1063. Finally, courts look at whether the plaintiffs performed the work on a regular basis and the "uncertainty of how often employees performed the tasks and of how long a period was required for their performance are also relevant." Id. at 1063.

In a case factually similar to the instant case where plaintiffs filed a complaint against the defendant Time Warner, based on its clock-in and out policy, the district court found that six minutes to unlock the employees' computers was *de minimis*. See Gillings, 2012 WL 1656937, at *4. The court also concluded that it would be difficult to record the additional time involved as each employees' log in time varied based on whether they locked their computers or were dexterous with the program. Id.

In this case, as to the claim that Defendant did not pay its employees for time spent "waking up" their computers until they logged into Avaya/Kronos, Plaintiff Waine-Golston testified that it took "less than a minute" to "wake up the computer, log in my ID and then immediately I would go to Avaya." (Dkt. No. 81-6, Ozmer Dec., Ex. A, Waine-Golston Depo. at 195:4-16.) Corbin states that it took up at most two minutes to start the computer and log in to Avaya/Kronos. (Id., Ex. B, Corbin Depo. at 108:21-109:3.) As to logging off, Waine-Golston stated that it took about 30 seconds. (Id., Ex. A, Waine-Golston Depo. at 231:1-5.)

The Court concludes the logging in and off time on Avaya/Kronos was *de minimis*. First, one to two minutes of time is *de minimis*. See Lindow, 738 F.2d at 1062 . Second, as the court in Gillings explained, it would be administratively difficult to record the additional time because of factors that vary among employees such as whether they locked their computers or were dexterous with the log-in program. Gillings, 2012 WL 1656937 at *4. Here, similarly, it would be administratively difficult to record each individual employees' log-in time. As to the individually named Plaintiffs, they logged in to their computers by pressing Ctl-Alt-Del and so the log in time was at most two minutes. Accordingly, the Court finds that the time Plaintiffs spent loading their computers before they

activated Avaya/Kronos was *de minimis*.

In addition, Defendant argues Plaintiffs testified that they usually clocked into Avaya/Kronos before logging into computer programs. However, if Plaintiffs logged into computer programs prior to clocking in to Avaya/Kronos, the time spent is also *de minimis*. Plaintiffs have only directed the Court to two instances where Plaintiffs first logged in to AAD or Unified prior to clocking in where there was a loss of three minutes and one minute.[4] The Court concludes that the two examples do not demonstrate that Plaintiffs regularly logged into computer programs prior to clocking in. See Lindow, at 1063. Moreover, Defendant provides the deposition testimony of both Plaintiffs stating that they regularly clocked in to Avaya/Kronos before logging into computer programs. (See Dkt. No. 81-6, Ozmer Decl., Ex. A, Waine-Golston Depo. at 223:9-16; 226:18-227:15; Ex. B, Corbin Depo. at 71:9-11; 85:24-86:7; 91:13-13; 95:9-18.)[5]

Plaintiffs have not set forth facts to show there is a genuine issue for trial. Accordingly, the Court GRANTS Defendant's motion for summary judgment as to the logging in and out claim.

### C.     Failure to Pay Overtime Compensation Based on Defendant's Standard Compensation System

The first amended complaint alleges that Defendant failed to pay overtime compensation as a result of its failure to compensate for all recorded work-time. (Dkt. No. 88, Ps' Opp. at 8.) In its motion, Defendant argues that even if the first amended complaint were construed to include a rounding claim, it would fail as a matter of law because rounding is permissible. Plaintiffs argue that they were not paid all overtime as the evidence shows that Defendant's rounding policy caused Corbin to lose over 42 hours and 27 minutes of compensable time throughout the limitations period and caused Waine-Golston to lose over 2 hours and 43 minutes of compensable time throughout the

---

[4]The district court is not required to "scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonably particularity the evidence that precludes summary judgment." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996) (citation omitted).

[5]Plaintiffs allege that Waine-Golston was told that he was consistently instructed by his supervisors to load computer programs before clocking in. (Dkt. No. 88-3, Waine-Golston Decl. ¶ 4.) He directs the Court to a conversation he had with Kevin Nester, a lead Supervisor. (Dkt. No. 88-8, Ps' NOL, Ex. W.) The conversation is difficult to understand as there are acronyms and/or abbreviations not familiar to the Court and not explained by Plaintiffs. Moreover, it is not clear that the content of the conversation supports Plaintiffs' position.

limitations period.

The Department of Labor regulations provide:

> (b) "Rounding" practices. It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.

29 C.F.R. § 785.48(b). Plaintiffs have stipulated that they do not dispute the legality of 29 C.F.R. § 785.48(b). (Dkt. No. 43.)

An employer's rounding policy complies with § 785.48(b) "if the employer applies a consistent rounding policy that, on average, favors neither overpayment nor underpayment." Eddings v. Health Net, Inc., 10-1744-JST(RZx), 2012 WL 994617, at *3 (C.D. Cal. Mar. 23, 2012) (citing East v. Bullock's Inc., 34 F. Supp. 2d 1176, 1184 (D. Az. 1998)); see also Contini v. United Trophy Mfg., Inc., No. 6:06cv432-Orl-18UAM, 2007 WL 1696030, at *4 (M.D. Fla. June 12, 2007) (holding there was no violation of FLSA because time clock rounding to nearest quarter hour was equally applied to all employees); Adair v. Wisconsin Bell, Inc., No. 08-C0280, 2008 WL 4224360, at *11 (E.D. Wis. Sept. 11, 2008) (approving rounding time to nearest quarter hour in absence of policy that "systematically favors the employer").

Rounding is permissible as long as the practice is neutral on its face and in practice. Alonzo v. Maximus, Inc., 832 F. Supp. 2d 1122, 1127 (C.D. Cal. 2011); Gillings, 2012 WL 1656937 at *6. However, an employer's rounding policy violates the regulation if it systematically undercompensates employees. See Chao v. Self Pride, Inc., No. Civ. RDB 03-3409, 2005 WL 1400740, at *6 (D. Md. June 14, 2005) (employer only rounded down); Gonzalez v. Farmington Foods, Inc., 296 F. Supp. 2d 912, 933 (N.D. Ill. 2003) (genuine issue of fact whether defendant's editing and rounding practices so that Kronos system was programmed to prevent employees from punching in seven minutes prior to the start of a shift and rounds to the nearest quarter hour was permissible).

In East v. Bullock, while plaintiff cited 24 examples that she was paid for less than the full time she worked, the record showed that during the same time period the records showed that she was also

overpaid. <u>East</u>, 34 F. Supp. 2d at 1184. The court concluded that Defendant's rounding practice averaged out sufficiently to comply with the regulations. <u>Id.</u>

In this case, Defendant states that it rounds time punches to the nearest quarter hour at the beginning and end of the day and subtracts the time taken for lunch, which is also rounded. (Dkt. No. 81-3, Chandler Decl. ¶ 9.) For example, if an employee clocks in at 8:05 a.m., the employee's time would be rounded to 8:00 p.m. and gain 5 minutes of time. If he clocks out at 5:01 p.m, that time is rounded to 5:00 p.m. with the employee losing 1 minute. (<u>Id.</u>)

Defendant argues that its neutral rounding policy is permitted under the regulations pursuant to 29 C.F.R. § 785.48. For purposes of this motion, Defendant's counsel conducted an analysis of Plaintiffs' time records. (Dkt. No. 81-5, Kabat Decl. ¶ 5.) He conducted an analysis of the exact number of minutes recorded in Kronos against the time for which Plaintiffs were paid. (<u>Id.</u>) Defense counsel looked at seven pay periods from March 4, 2011 - April 14, 2011; April 29, 2011 - June 23, 2011. (<u>Id.</u>) Based on his analysis, the records showed that Corbin had a net gain of 1 hour and 58 minutes during those pay periods. (<u>Id.</u>) As to Waine-Golston, defense counsel looked at five pay periods from March 4, 2011 - March 31, 2011; April 15, 2011 - May 12, 2011; and May 27, 2011 - June 9, 2011. (<u>Id.</u> ¶ 6.) During these five pay periods, Waine-Golston had a net gain of 53 minutes. (<u>Id.</u>)

Plaintiffs object arguing that over time, they were not "fully compensated" for "all the work they actually worked" as required by the rounding regulation. Plaintiffs' counsel also conducted an analysis of Plaintiffs' time records. (Dkt. No. 88-7, Ps' NOL, Exs. L & M.) Plaintiffs' counsel stated his analysis mirrored defense counsel's analysis with the exception that Plaintiffs' counsel conducted an analysis of all the time records for Waine-Golston that were disclosed to him. (Dkt. No. 88-2, Sullivan Decl. ¶ 10.) Plaintiffs' counsel analyzed the period from October 29, 2010 to July 7, 2011. (Dkt. No. 88-7, Ps' NOL, Ex. L.) Waine-Golston did not stop working at Time Warner until April 12, 2012. Similarly, Plaintiffs' counsel analysis for Corbin covers the period from July 2, 2007 - June 15, 2011. (Dkt. No. 88-7, Ps' NOL, Ex. M.) Plaintiffs' counsel came up with a monetary conclusion determining that Waine-Golston lost $34.06 while Corbin lost $811.04. (Dkt. No. 88-2, Sullivan Decl. ¶¶ 13, 16.) Plaintiffs' counsel determined the monetary losses by accounting for the fact that overtime

compensation is paid at 1.5 times the regular rate. (Id. ¶ 14.) For example, even though, for the period from April 15, 2011 - April 28, 2011, there was a net gain of five regular time minutes and a loss of four overtime minutes, there was actually lost compensation during this pay period because the loss of overtime minutes, which is monetarily valued more, caused Plaintiff to lose compensation. (Id.) The Court questions and is not persuaded by Plaintiffs' analysis of lost compensation as they have not provided any authority that overtime minutes lost is to be calculated differently than regular minutes lost in a rounding analysis. In support, Plaintiffs also cite to the declaration of their expert, Jeffrey D. Porter, a certified public accountant. (Dkt. No. 88-4.) As discussed below, the Court grants Defendant's motion to strike Porter's declaration as unreliable. As such, Plaintiffs may not rely on Porter's declaration as support. Based on these inaccurate and/or selective analyses of the time records, at the hearing, the Court requested additional analysis and briefing by the parties.

In their joint findings regarding the impact of the rounding policy, Plaintiffs calculated the alleged loss of compensation based on the rounding policy on a per pay period basis where "regular" minute gains and losses were distinguished from "overtime" minute gains and losses[6] while Defendants analyzed the total amount of minutes lost or gained during the relevant time periods. (Dkt. No. 102.) The parties analyzed the time records for Plaintiff Corbin from May 4, 2010 until his termination on June 15, 2011 and Plaintiff Waine-Golston from October 29, 2010 through October 13, 2011. Although Waine-Golston worked until April 2012, his last record of actually clocking in for work was October 13, 2011. (Id.) Based on the number of minutes gained or lost, Corbin gained a total of 3 minutes and Waine-Golston lost a total of 95 minutes. (Id. at 3.)

On its face, Defendant's rounding policy is neutral. According to the time records, Plaintiffs have lost and gained time due to the rounding policy. There is no indication that Defendant only rounded down or prevented employees from punching in seven minutes prior to the start of a shift so as not to benefit from the rounding practice. See Chao, 2005 WL 1400740, at *6; Gonzalez, 296 F.

---

[6]According to Plaintiffs' analysis, Corbin lost $68.35 in overtime compensation; gained $53.33 in regular time compensation; and in total lost $15.02 in total compensation. (Dkt. No. 102 at 3.) Waine-Golston lost $61.97 in overtime compensation; gained $21.97 in regular time compensation; and in total lost $40.00 in total compensation. (Id.)

Supp. 2d at 933.

In practice, the Court also concludes that the evidence shows that the rounding policy is neutral. In Gillings, in determining whether the rounding policy was neutral in practice, Defendant offered evidence that two of the four plaintiffs benefitted from the rounding policy. Gillings, 2012 WL 1656937 at 6. Since Defendant demonstrated that two plaintiffs gained while two plaintiffs lost, the court held that Defendant met its initial burden to demonstrate there was no genuine issue of fact regarding the neutral application of their rounding policy. Id. Similarly, here, in looking at the number of minutes gained or lost, Corbin gained a total of three minutes while Waine-Golston lost a total of 95 minutes. This demonstrates the neutral application of Defendant's rounding policy. See id. Moreover, in looking at any selective time period when Plaintiffs worked at Time Warner, depending on the time period, the record reveals that both have gained and lost minutes. This would also indicate a neutral application. Furthermore, Waine-Golston's time records are not complete as they only cover the period through October 13, 2011 and not until his last day of work in April 2012. Therefore, if a complete record were available, it might show that Waine-Golston could have gained time during his entire employment at Time Warner.

Based on the record, the Court concludes that Defendant's rounding policy is neutral, on its face and in practice. Plaintiffs have failed to demonstrate a genuine issue of material fact as to their claim of failure to pay overtime compensation. Accordingly, the Court GRANTS Defendant's motion for summary judgment on this claim.

**D.    Defendant's Motion to Strike Plaintiffs' Expert Declaration**

Defendant moves to strike Plaintiffs' expert declaration of Jeffrey D. Porter, a certified public accountant, as a violation of the discovery rules[7] and a failure to comply with Federal Rule of Evidence 702. (Dkt. No 90-2.) Plaintiffs seek to use the conclusions in the declaration of Jeffrey D. Porter to show that Plaintiffs were not fully compensated overtime based on Defendant's rounding policy. (Dkt. No. 88-4.) The Court addresses Defendant's motion to strike Plaintiffs' expert declaration on the

---

[7] The Court notes that as to the discovery issues, Defendant could have used the mechanisms of the discovery rules and the Magistrate Judge to resolve any discovery related issues as to experts.

merits pursuant to Federal Rule of Evidence 702.

Federal Rule of Evidence 702 provides that expert testimony is admissible if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Expert testimony under Rule 702 must be both relevant and reliable. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999). When considering evidence proffered under Rule 702, the trial court must act as a "gatekeeper" by making a preliminary determination that the expert's proposed testimony is reliable. Elsayed Mukhtar v. Cal. State Univ., Hayward, 299 F.3d 1053, 1063 (9th Cir. 2002), amended by 319 F.3d 1073 (9th Cir. 2003). A trial court has broad discretion when discharging its gatekeeping function on whether to admit expert testimony but also how to test an expert's reliability. United States v. Hankey, 203 F.3d 1160, 1168 (9th Cir. 2000).

Rule 702 sets forth three distinct but related requirements: "(1) the subject matter at issue must be beyond the common knowledge of the average layman; (2) the witness must have sufficient expertise; and (3) the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion." United States v. Finley, 301 F.3d 1000, 1007 (9th Cir. 2002) (citing United States v. Morales, 108 F.3d 1031, 1038 (9th Cir. 1997)).

Defendant argues that Porter's declaration is not reliable because it is based on false assumptions and a methodology that is insufficient. Specifically, it alleges that Porter's analysis does not take into consideration the time rounded for lunch breaks and only addresses clock in and clock out times. Therefore, his analysis does not address the actual effect of Defendant's rounding practice. The Court agrees. In addition, the Court notes that Porter's analysis of Corbin includes time when Corbin began working at Time Warner from July 20, 2007 through June 15, 2011. However, the Avaya/Kronos system was not in effect until May 2010. Therefore, Porter's conclusions about the aggregate number under reported hours are not reliable as it includes a time period of almost three years that is not asserted in the first amended complaint. Lastly, Defendant argues that Porter's opinion is not specialized as it is nothing more than a series of simple calculations which does not require expert skills. Again, the Court agrees. As noted above, both Plaintiffs' counsel and

Defendant's counsel conducted a similar analysis of Plaintiffs' time records comparing the number of exact minutes recorded in Kronos against the time for which they were paid based on the rounded Kronos records. As both counsel conducted the same or similar analysis as Porter, the alleged "expert," it cannot be said that Porter's analysis consists of a subject matter "beyond the common knowledge of the average man." See Finley, 301 F.3d at 1007. Accordingly, the Court GRANTS Defendant's motion to strike Plaintiffs' expert declaration of Jeffrey D. Porter as not reliable.

### III.   California Labor Code

Plaintiffs assert several causes of action pursuant to the California Labor Code based on the same factual allegations as the FLSA cause of action.

#### A.   California Labor Code Sections 510(a) and 204(a)

Plaintiffs maintain that Defendant violated Labor Code sections 204(a) and 510(a)[8] for failing to and accurately provide all wages due including overtime compensation. (Dkt. No. 6, FAC ¶¶ 70-85.)

California Labor Code section 510(a) states that an employer must pay overtime compensation to an employee for "any work in excess of eight hours in one workday and any work in excess of 40 hours in any one work week . . . at a rate of no less than one and one-half times the regular rate of pay for an employee." Cal. Labor Code § 510(a). "Because the California wage and hour laws are modeled to some extent on federal laws," federal cases can provide persuasive guidance." Nordquist v. McGraw-Hill Broadcasting Co., 32 Cal. App. 4th 555, 562 (1995). California's Division of Labor Standards Enforcement ("DLSE") has expressly adopted the federal regulation permitting rounding. Gillings, 2012 WL 1656937, at *5 (citing DLSE Enforc. Policies & Interp. Manual 47.1-2); see also See's Candy Shops, Inc. v. The Superior Court, 210 Cal. App. 4th 889, 903 (2012) (adopting rounding policy concluding that the policies underlying the federal regulation on rounding "apply equally to the employee-protective policies embodied in California labor law"). In addition, Labor Code section

---

[8]Defendant objects to Plaintiffs' alleged claim that paid time off for birthdays and the cost of discounted cable service should be included in the regular rate for purposes of calculating overtime pay as these claims are not alleged in the first amended complaint. Plaintiffs does not address this issue. As these allegations are not in the first amended complaint, the Court declines to address these issues.

1  204(a) requires employers to pay all wages in excess of the normal work period to be paid the next
2  regular payroll period. Cal. Labor Code § 204(a).

3        Plaintiffs cite to See's Candy Shops, Inc. v. The Superior Court, where the court of appeal held
4  that there was a genuine issue of material fact as to whether the employer's affirmative defense of
5  rounding work time to the nearest six minutes undercompensated employees. 210 Cal. App. 4th 889,
6  705 (2012). Based on this case, Plaintiffs argue that this case should also proceed to trial.

7        In See's, the court held that California law allows rounding if the employees are fully
8  compensated "over a period of time." Id. at 903. Based on the procedural disposition of the case, the
9  employer's burden was not to prove that its rounding policy was lawful, but to oppose plaintiff's
10 motion for summary adjudication by demonstrating a triable issue of fact. By demonstrating through
11 expert analysis that the rounding policy was neutral over time and that employees actually benefitted
12 from the rounding policy by being overpaid, the employer created a genuine issue of material fact. Id.
13 at 705.

14       In this case, the Court concluded that the rounding policy, on its face and in practice, was
15 neutral and that Plaintiffs failed to demonstrate a triable issue of fact under the FLSA. Since the state
16 court has adopted the federal regulation permitting rounding, the Court GRANTS Defendant's motion
17 for summary judgment as to Plaintiffs' claims under Labor Code sections 204(a) and 510(a)

18     **B.**     **California Labor Code Section 226(a)**; **California Code of Regulations, title 8,**
19           **section 1110**

20       Plaintiffs complain that Defendant failed to provide accurate itemized wage statement to them
21 in violation of Labor Code section 226(a) and Code of Regulations, title 8, section 11110(7)(A). (Dkt.
22 No. 6, FAC ¶¶ 86-91.)

23       Labor Code section 226(a) requires that employers provide accurate itemized wage statements.
24 Cal. Labor Code § 226(a). In addition, the California Code of Regulations requires that employers
25 keep accurate information regarding each employee to include time records showing when an
26 "employee begins and ends each work period" and "total wages paid each payroll period, including
27 value of board, lodging, or other compensation actually furnished to the employee" and "total hours
28

worked in the payroll period and applicable rates of pay." Cal. Code Regs. tit. 8, § 11110(7)(A).

The facts in the first amended complaint to support this claim is the logging in and off under the Avaya/Kronos time records system. Plaintiffs allege that Defendant failed to provide accurate itemized wage statement as the gross wages earned, total hours worked and net wages earned are all undervalued. Since the Court grants Defendant's motion for summary judgment concerning the logging in and off claim, the Court must also grant Defendant's motion for summary judgment on the inaccurate wage statement claim.

### C.    Labor Code Section 203(a)

Plaintiffs allege that Defendant violated Labor Code section 203(a), also known as "waiting time penalties," without any supporting facts. (Dkt. No. 6, FAC ¶¶ 92-93.)

Labor Code section 203 states that an employer is liable for penalties if it "willfully fails to pay" wages due to an employee at the time he or she is discharged or quits. Cal. Labor Code § 203(a). As discussed above, the Court grants Defendant's motion for summary judgment as to Plaintiffs' allegation that Defendant's failed to pay all overtime wages due under federal and state law. Therefore, the Court GRANTS Defendant's motion for summary judgment on the claim for waiting time penalties.

### D.    California Business & Professions Code section 17200

Section 17200 provides a cause of action for "unfair competition," which is defined as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Unlawful" practices include "anything that can properly be called a business practice and at the same time is forbidden by law." Farmers Ins. Exch. v. Superior Court, 2 Cal. 4th 377, 383 (1992). Section 17200 "borrows" violations of other laws and treats them as unlawful practices independently actionable under section 17200. Id. "Unfair" means any practice whose harm to the victim outweighs its benefits. Olsen v. Breeze, Inc., 48 Cal. App. 4th 608, 618 (1996). "Fraudulent" as used in the statute does not refer to the common law tort of fraud, but rather requires a showing that members of the public are likely to be deceived. Id.; Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1267 (1992). Plaintiffs' UCL claim is dependent on the substantive causes of action alleged in the first

amended complaint. Krantz v. BT Visual Images, LLC, 89 Cal. App. 4th 164, 178 (2001).

Plaintiffs allege unfair business practices based on Defendant's failure to pay all wages earned, failure to maintain accurate time records, and failure to pay overtime compensation. (Dkt. No. 6, FAC ¶ 97.) Since the Court grants Defendant's motion for summary judgment as to all these causes of action, the Court also GRANTS Defendant's motion for summary judgment as to the claim of unfair business practices pursuant to California Business & Professions Code section 17200.

### E. Private Attorneys General Act (PAGA)

As the Court is granting Defendant's motion for summary judgment as to all state causes of action, the Court also GRANTS Defendant's motion for summary judgment as to PAGA as it is based on the same allegations.

## IV. Defendant's Evidentiary Objections

As part of their opposition, Plaintiffs filed objections to the evidence submitted by Defendant in support of its motion for summary judgment. Specifically, Plaintiffs object to portions of the declarations of Valerie Chadler, Lori Testa, Michael Kabat, and Joseph Ozmer.

The Court notes Plaintiffs' objections. To the extent that the evidence is proper under the Federal Rules of Evidence, the Court considered the evidence. To the extent that the evidence is not proper, the Court did not consider them.

## Conclusion

Based on the above, the Court GRANTS Defendant's motion for summary judgment. The Clerk of Court shall enter judgment accordingly.

IT IS SO ORDERED.

DATED: March 27, 2013

HON. GONZALO P. CURIEL
United States District Judge